

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-10-2007

# Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4610

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Chen v. Atty Gen USA" (2007). *2007 Decisions*. Paper 798.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/798

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4610

DA XIANG CHEN;
DA LI CHEN,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review of a Decision
of the Board of Immigration Appeals
(BIA Nos. A95-461-890, A95-467-797)
Immigration Judge: Miriam Mills

Submitted under Third Circuit LAR 34.1(a)
May 22, 2007

BEFORE: BARRY, CHAGARES, and TASHIMA,[*] Circuit Judges

(Filed July 10, 2007)

OPINION OF THE COURT

---

[*] The Honorable A. Wallace Tashima, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

CHAGARES, Circuit Judge.

Da Xiang Chen and his older brother, Da Li Chen, are natives and citizens of China. They applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), claiming that if they return to China they will be persecuted and tortured because they are known followers of Falun Gong. The Immigration Judge ("IJ") denied their applications. They petition this Court for review of a final order of the Board of Immigration Appeals ("BIA") affirming the IJ's decision. Because we conclude that the IJ's decision is supported by substantial evidence, we will deny the petition.

I.

As we write for the parties only, our summary of the facts is brief.

Da Xiang Chen is the lead petitioner. He arrived in the United States on May 28, 2001, and his brother arrived in July of 2001. Both petitioners applied for asylum in early May of 2002.

Da Xiang Chen and Da Li Chen testified before the IJ that they began practicing Falun Gong in 1999. They separately stated that village cadres came to petitioners' house in March of 2000, and arrested their mother for being a local leader of Falun Gong. Da Xiang Chen stated before the IJ that the family's house was searched on the day his mother was arrested. He testified that the cadres searched so thoroughly that the house was a mess when they were done. In contrast, Da Li Chen stated that cadres did not search the family's house. Once informed that his brother testified a search occurred, Da Li Chen explained that after his mother was apprehended, Da Li Chen immediately went

2

to inform his father, suggesting a search could have occurred after he left. When asked

about the condition of the house when he eventually returned home, Da Li Chen

responded that, when he returned, he was nervous and he did not pay attention to what his

brother was saying. Da Li Chen later stated that he waited until his mother left with the

cadres before going to get his father. Affidavits from petitioners, submitted in support of

their asylum applications, did not mention that cadres searched the family's house at all.

According to petitioners' testimony, authorities discovered Da Xiang Chen

followed Falun Gong when he was caught putting up Falun Gong posters with his brother

and a friend in January of 2001. Police officers arrested Da Xiang Chen and the friend,

but Da Li Chen escaped capture.[1] Da Xiang Chen testified that he was detained for two

months, and during that time he was beaten and made to watch video tapes for ten hours

every day that described Falun Gong as an evil cult. Upon his release, he was ordered to

return weekly to the police to report his activities. Da Xiang Chen did not comply with

this order. He went into hiding and was soon joined by his brother.

Petitioners testified that their parents arranged for their departure from China by

paying a "snakehead," a professional smuggler, to take petitioners to the United States.

Da Xiang Chen testified that he had a passport and left with legitimate documents. He

told the IJ he gave his passport to the snakehead after he arrived in the United States. He

---

[1] Petitioners' brief indicates that both Da Xiang Chen and Da Li Chen were arrested and detained for two months, Pet. Br. 6, but petitioners consistently testified before the IJ and in their asylum applications that only Da Xiang Chen was arrested.

further explained that the passport was returned to him after the snakehead gave it to his mother in China, and she gave it to his cousin, who traveled to the United States and gave it to Da Xiang Chen. Petitioners submitted to the IJ a letter from their mother which explains how petitioners' mother gave documents to the petitioners' cousin, who delivered the documents to petitioners in the United States. The letter does not specifically mention Da Xiang Chen's passport.

Da Xiang Chen's passport has a stamp indicating departure from Hong Kong in June of 2001, but Da Xiang Chen told the IJ that he had not left the United States since he arrived in May of 2001.

The IJ denied petitioners' claims in an oral decision dated May 10, 2004, finding several inconsistencies with their testimony and determining petitioners were not credible for the reasons discussed below. Petitioners appealed. The BIA affirmed the IJ's decision without opinion on September 19, 2005. Petitioners thereafter filed this petition for review.

## II.

In order to receive a grant of asylum, applicants have to demonstrate to the BIA that they have a well-founded fear of persecution on account of their religion or one of the other specified grounds listed in 8 U.S.C. § 1101(a)(42)(A). See Zubeda v. Ashcroft, 333 F.3d 463, 469-70 (3d Cir. 2003). Applicants face a more difficult burden to establish that they are entitled to withholding of removal because they need to show to the BIA that, more likely than not, they will suffer persecution if they are removed. See id. And

4

similarly, for the BIA to grant relief under CAT, applicants need to establish that, more likely than not, they will be tortured.  See id. at 471-72.

When the BIA adopts an IJ's opinion, we review the opinion of the IJ.  Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005).  Our review of the IJ's decision is extremely deferential.  "If a reasonable fact finder could make a particular finding on the administrative record, then the finding is supported by substantial evidence" and we will affirm.  See Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003).  We will reverse only if we conclude that the record "compels" that we do so.  INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992) (emphasis removed).

### III.

A thorough review of the record leads us to conclude that substantial evidence supports the IJ's decision.  Da Xiang Chen's testimony at the hearing before the IJ was inconsistent with his statement at an asylum interview regarding the timing of his mother's arrest for being a Falun Gong follower.[2]  At an asylum interview in August of 2002, he stated that his mother was arrested after Da Xiang Chen himself was arrested in January of 2001.  At the hearing before the IJ and in his affidavit, Da Xiang Chen stated

---

[2] We have previously held that inconsistencies between a statement given at an airport interview and testimony before an IJ cannot alone justify an adverse credibility finding.  See Balasubramanrim v. I.N.S., 143 F.3d 157, 164 (3d Cir. 1998).  Da Xiang Chen's asylum interview, however, was conducted months after his arrival, and petitioners do not point to any coercive or stressful circumstances of the interview which would make his statements unreliable.  More importantly, the inconsistency evident in the interview is not the only inconsistency on which the IJ relied.

that his mother was arrested in March of 2000, prior to his own January 2001 arrest. In addition, the IJ identified inconsistent testimony regarding whether the cadres searched the Chen family home on the day petitioners' mother was arrested. Da Li Chen testified that cadres did not search his family's home on that day, but Da Xiang Chen testified that the village cadres made a mess of the house as a result of their search. When presented with his brother's testimony, Da Li Chen indicated that he did not see cadres conduct the search because he left to inform his father that his mother was arrested, implying that cadres were still in his house when he left. He later contradicted this implication, stating he went to find his father after the cadres had left the house with his mother.

Petitioners' request for relief is further undermined by evidence that Da Xiang Chen traveled back to China after his arrival in the United States. Da Xiang Chen indicated that the stamp in his passport signifying entry in Hong Kong must have occurred while his passport was in the control of the snakehead. The letter from petitioners' mother fails to identify Da Xiang Chen's passport as one of the items transported back to the United States via petitioners' cousin, and so the IJ could reasonably wonder how Da Xiang Chen was reunited with his passport if it indeed was not in his possession when it was used to enter Hong Kong. Because we are satisfied that these inconsistencies in the record provide substantial evidence supporting the IJ's opinion, we do not need to discuss the other inconsistencies identified by the IJ.[3]

---

[3] In addition to the reasons mentioned above for denying petitioners' relief, the IJ concluded several aspects of petitioners' testimony were inconsistent and implausible.

6

## IV.

For the foregoing reasons, we will deny the petition.

---

First, the IJ found it implausible that Da Xiang Chen would be able to travel to the United States on legitimate travel documents if he was wanted by authorities for failing to comply with a condition of his release. Second, the IJ found it implausible that village cadres would have searched the Chen home in March of 2000 and would not have discovered the Falun Gong book and tape that Da Xiang Chen claimed was hidden under a bed. Third, the IJ highlighted inconsistent testimony by the petitioners regarding whether the Chen family had a telephone in 2001. Fourth, the IJ found inconsistent testimony regarding whether petitioners' mother suffered harm since petitioners' departure from China and whether their mother was living in the same house as she was in 2000.